IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALEXANDER W.,[1]                              3:20-cv-00087-BR

          Plaintiff,                    OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.


BRUCE W. BREWER
Law Offices of Bruce W. Brewer, P.C.
P.O. Box 421
West Linn, OR  97068
(503) 621-6633

          Attorney for Plaintiff

SCOTT ERIK ASPHAUG
Acting United States Attorney
RENATA GOWIE
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

─────────────────────

     [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.  Where applicable, this Court uses the same
designation for the nongovernmental party's immediate family
member.


1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**LISA GOLDOFTAS**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3858

       Attorneys for Defendant

**BROWN, Senior Judge.**

      Plaintiff Alexander W. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further administrative proceedings.

## <u>ADMINISTRATIVE HISTORY</u>

      On December 30, 2016, Plaintiff protectively filed his

2 - OPINION AND ORDER

applications for DIB and SSI benefits.  Tr. 13, 272, 282.[2]
Plaintiff alleges a disability onset date of April 1, 2015.
Tr. 13, 273, 282.  Plaintiff's applications were denied
initially and on reconsideration.  An Administrative Law Judge
(ALJ) held a hearing on September 26, 2018, at which Plaintiff
and a vocational expert (VE) testified.  Tr. 55-81.  At a
supplemental hearing on February 13, 2019, a VE and an
independent medical expert (ME) testified.  Tr. 31-54.
Plaintiff was represented by an attorney at both hearings.

On February 27, 2019, the ALJ issued an opinion in which
she found Plaintiff is not disabled and, therefore, is not
entitled to benefits.  Tr. 13-24.  Plaintiff requested review by
the Appeals Council.  On November 19, 2019, the Appeals Council
denied Plaintiff's request to review the ALJ's decision, and the
ALJ's decision became the final decision of the Commissioner.
Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On January 15, 2020, Plaintiff filed a Complaint in this
Court seeking review of the Commissioner's decision.

---

[2] Citations to the official Transcript of Record (#10)
filed by the Commissioner on July 14, 2020, are referred to as
"Tr."

## BACKGROUND

Plaintiff was born on November 4, 1994.  Tr. 23, 272, 282.
Plaintiff was 20 years old on his alleged disability onset date.
Tr. 23.  Plaintiff has a high-school education.   Tr. 23, 427.
Plaintiff does not have any past relevant work experience for
purposes of disability determination.  Tr. 22.  Plaintiff,
however, has worked part-time in the fast-food industry as a
cook, prep-worker, and dishwasher.  Tr. 386, 415, 416.

Plaintiff alleges disability due to Autism Spectrum
Disorder, Attention-Deficit/Hyperactivity Disorder (ADHD),
obesity, and bilateral chronic heel pain from plantar fasciitis.
Tr. 85, 426, 448.

Except as noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 18-22.

## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110
(9th Cir. 2012).  To meet this burden a claimant must
demonstrate his inability "to engage in any substantial gainful

activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."  42
U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when
there is ambiguous evidence or when the record is inadequate to
allow for proper evaluation of the evidence.  *McLeod v. Astrue*,
640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,*
276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.  42
U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*,
682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is
"relevant evidence that a reasonable mind might accept as
adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11
(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690
(9th Cir. 2009)).  "It is more than a mere scintilla [of
evidence] but less than a preponderance."  *Id.* (citing
*Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's
testimony, resolving conflicts in the medical evidence, and
resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591

(9th Cir. 2009).  The court must weigh all of the evidence
whether it supports or detracts from the Commissioner's
decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th
Cir. 2008).  Even when the evidence is susceptible to more than
one rational interpretation, the court must uphold the
Commissioner's findings if they are supported by inferences
reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d
1047, 1051 (9th Cir. 2012).  The court may not substitute its
judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454
F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity (SGA).  20 C.F.R. §§ 404.1520(a)(4)(i),
416.920(a)(4)(i).  *See also Keyser v. Comm'r of Soc. Sec.*, 648
F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  20 C.F.R.
§§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also*

*Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the

Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since April 1, 2015, Plaintiff's alleged disability onset date.  Tr. 15.

At Step Two the ALJ found Plaintiff has the severe

8 - OPINION AND ORDER

impairments of plantar fasciitis, Autism Spectrum Disorder, and ADHD.  Tr. 16.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 16.  The ALJ found Plaintiff has the RFC to perform medium work with the following limitations:  can stand and/or walk for up to four hours total; cannot climb ladders, ropes, or scaffolds; can only occasionally climb ramps or stairs; cannot be exposed to hazards such as unprotected heights and moving mechanical parts; can only perform simple, routine, and repetitive tasks with a reasoning level of 2; can make only simple work-related decisions; cannot have any contact with the public; can have only occasional interaction with coworkers and supervisors with no teamwork and little or no change to his work environment; and would be absent from work one day per month. Tr. 17.

At Step Four the ALJ concluded Plaintiff has not performed any past relevant work.  Tr. 22.

At Step Five the ALJ found Plaintiff can perform other jobs that exist in the national economy such as bench-assembler, basket-filler, and hand-packager.  Tr. 23-24.  Accordingly, the

ALJ found Plaintiff is not disabled.  Tr. 24.

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) failed to provide legally sufficient reasons for discounting the medical opinions of Pavan Somusetty, M.D., Plaintiff's treating psychiatrist, and John Nance, Ph.D., the testifying ME; (2) failed to provide legally sufficient reasons for discounting Plaintiff's symptom testimony; (3) failed to provide legally sufficient reasons for discounting the lay-witness testimony; and (4) failed to include in Plaintiff's RFC the limitations found by Dr. Somusetty.

**I.    The ALJ erred when she discounted the medical opinions of Drs. Somusetty and Nance.**

Plaintiff contends the ALJ erred when she discounted the medical opinions of Drs. Somusetty and Nance regarding Plaintiff's limitations.

### A.    Standards

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability - the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  "In conjunction with the relevant regulations, [courts]

10 - OPINION AND ORDER

have . . . developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* Even when contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick,* 157 F.3d at 725. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

**B.    Analysis**

   **1.    Dr. Somusetty**

Dr. Somusetty treated Plaintiff for his mental-health issues from July 2015 through December 2016. Tr. 771.

At his initial examination Dr. Somusetty noted Plaintiff had
multiple characteristics consistent with Autism Spectrum
Disorder and ADHD.  Tr. 530-31.

On January 5, 2016, Dr. Somusetty noted Plaintiff
appeared "stable, was more focused on Ritalin," and was not
anxious, depressed, psychotic, or manic.  Tr. 628.

On August 16, 2016, Dr. Somusetty noted
Plaintiff's ADHD was "stable" and his autism "seems manageable."
Tr. 600.  Plaintiff reported his attention span had stabilized
with medication.  Tr. 600.

On December 6, 2016, Dr. Somusetty again noted
there was not any change in Plaintiff's Autistic Spectrum
Disorder or ADHD.  Tr. 594.  Dr. Somusetty also informed
Plaintiff that he was leaving the clinic and would no longer
be Plaintiff's long-term care psychiatrist.  Tr. 594.
Dr. Somusetty wrote a narrative letter on behalf of Plaintiff
describing Autistic Spectrum Disorder and "explaining some of
the characteristics of [Plaintiff's] condition and how it
affects him in the work place or in attempting to gain
employment."  Tr. 585.  Dr. Somusetty concluded in his letter:
"[Plaintiff's] particular condition is complicated by Attention
Deficit Disorder, which makes it even more difficult to follow

instructions or participate in activities which are not
stimulating or exciting."  Tr. 585.

On January 19, 2016, Plaintiff's mother called
and left a message for Dr. Somusetty regarding paperwork sent to
him for Plaintiff's disability claim.  Tr. 592-93.  A nurse
returned the call and spoke to Plaintiff regarding the
paperwork.  The chart note regarding this conversation indicates
in part:  "[Patient] denied any need to speak with Dr. Somusetty
'I'm fine.'"  Tr. 593.

On February 2, 2017, Dr. Somusetty completed a
Mental Residual Functional Capacities report.  Tr. 769-72.
Dr. Somusetty indicated Plaintiff has "moderate limitations" in
his understanding, memory, sustained concentration, and social
interaction and has "marked limitations" in his ability to
interact appropriately with the general public, to maintain
socially appropriate behavior, and to adhere to basic standards
of neatness and cleanliness.  Tr. 769-70.  Dr. Somusetty also
indicated Plaintiff could be expected to miss six or more days
of work per month due to his psychological symptoms.  Tr. 771.
Dr. Somusetty noted Plaintiff has "difficulties on picking up
normal social cues that impair his social interactions" because
of his Autistic Spectrum Disorder, and Plaintiff's ADHD impairs

his concentration and memory.  Tr. 772.  Dr. Somusetty

concluded:  "Not only is it difficult to maintain employment, it

is highly challenging to even find a job because of poor

performance in interviews based on his underlying psychiatric

condition."  Tr. 772.

          The ALJ gave "partial weight" to Dr. Somusetty's

opinions.  Tr. 21.  The ALJ, however, discounted Dr. Somusetty's

narrative letter on the ground that it "does not address

limitations that would affect work with specificity."  Tr. 21.

The ALJ also concluded Dr. Somusetty's February 2017 opinion is

inconsistent with the overall record because he last treated

Plaintiff in December 2016, after which Plaintiff reported "I'm

fine" (in January 2017), Plaintiff's mental-status examinations

were "mostly normal," and Plaintiff was able to work part-time.

Tr. 21.

          In order to disregard the uncontradicted opinion

of a treating physician the ALJ must provide specific and

legitimate reasons based on substantial evidence in the record

for doing so.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Here the ALJ failed to provide such evidence.  As noted, the ALJ

discounted Dr. Somusetty's opinion because it was rendered two

months after his treatment of Plaintiff ended even though

Dr. Somusetty's opinion was based on his treatment of Plaintiff over 18 months.  Tr. 771.

The ALJ also relied on Plaintiff's "I'm fine" statement to discount Dr. Somusetty's opinion.  Although the Commissioner contends this statement indicates Plaintiff declined further treatment, it appears his statement was made in connection with telephone calls between Plaintiff's mother and Dr. Somusetty's nurse regarding paperwork related to Plaintiff's disability claim and the nurse's inquiry as to whether Plaintiff needed to speak to Dr. Somusetty about such paperwork.  It is questionable, however, whether Plaintiff made the statement in the context of receiving treatment for his mental-health condition.

The ALJ also concluded Plaintiff's mental-status examinations were "mostly normal," and the ALJ pointed to three exhibits in the record to support his conclusion.  Tr. 21. First, on June 8, 2015, Megan Lammers, L.C.S.W., a treating therapist, conducted a mental-status examination of Plaintiff. Tr. 526 (Ex. 2F/17).  L.C.S.W. Lammers noted Plaintiff was alert; was not confused; was oriented to time, person, and place; had appropriate appearance; had congruent mood; was cooperative; and did not have hallucinations or delusions.

15 - OPINION AND ORDER

Plaintiff's psychomotor activity was within normal limits, his memory was intact, his judgment was "good/socially appropriate", and his insight was fair.  His thought processes reflected his ruminations, and his thought content was relevant to the circumstances.  Tr. 526.  L.C.S.W. Lammers, however, noted Plaintiff had attention problems with his cognitive functions, latencies in his speech, intermittent eye contact, and blunted or constricted affect.  She concluded Plaintiff meets the criteria for "attention deficit disorder inattentive type and clearly meets criteria for the autism spectrum disorder." Tr. 528.  She indicated Plaintiff "could most benefit from referral to vocational rehab and/or another job training program," "consultation about medications for ADD," and "continuing to build life skills."  Tr. 528.

The ALJ also relied on a mental-status examination by Dr. Somusetty on July 14, 2015.  Tr. 21, 535 (Ex. 2F/26).  Dr. Somusetty noted Plaintiff was cooperative, had fairly good insight and judgment, and was alert and oriented. Plaintiff did not have suicidal or homicidal ideation, auditory or visual hallucinations, paranoia, delusions, grandiosity, nor "themes of hopelessness or worthlessness."  Dr. Somusetty noted, however, Plaintiff had intermittently poor eye contact,

fidgeting fingers, "sort of monotone but otherwise normal"
speech, and a "poverty of ideas."  Tr. 535.

      The ALJ also relied on Dr. Somusetty's mental-
status examination of Plaintiff on August 16, 2016.  Tr. 21, 601
(Ex. 8F/12).  Although this examination included findings
similar to those from Dr. Somusetty's July 24, 2015, examination
of Plaintiff, Dr. Somusetty indicated Plaintiff was "stable with
ADHD and Autism seems manageable" and his autism was not "better
or worse, fairly stable."  Tr. 600.  The June 8, 2015,
examination of Plaintiff by L.C.S.W. Lammers and the July 24,
2015, and August 16, 2016, examinations by Dr. Somusetty are
only three of the many examinations conducted during the 18
months that Plaintiff received treatment by Dr. Somusetty.
Thus, the Court notes the ALJ's generalization that Plaintiff's
mental-status examinations were "mostly normal" is conclusory
because the ALJ failed to set out a detailed and thorough
summary of the facts and conflicting clinical evidence, to state
her interpretation of those facts and clinical evidence, and to
explain why her interpretation rather than Dr. Somusetty's
opinion is correct.

      Finally, the ALJ discounted Dr. Somusetty's
opinion on the basis that Plaintiff is able to work part-time.

Tr. 21.  The ability to work part-time, however, is not inconsistent with a claim of disability.  *Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008).  In any event, Plaintiff points to the statements of Katherine Gay, Plaintiff's manager at his part-time job, in which Gay indicated Plaintiff does not complete all of the duties required for his position, requires special assistance, does not complete his work in the same amount of time as employees in similar positions, has fewer and/or easier duties, and has lower production standards.  Tr. 497.  The ALJ did not address Gay's statements.

The Court concludes on this record that the ALJ erred when she failed to provide legally sufficient reasons supported by substantial evidence in the record for discounting Dr. Somusetty's opinion.

### 2.  Dr. Nance

As noted, in February 2019 Dr. Nance testified as an impartial medical expert at the hearing before the ALJ. Dr. Nance concluded Plaintiff did not meet the Listings for mental impairments.  Tr. 21, 36.  Dr. Nance, however, testified Plaintiff has moderate limitations in his ability to understand, to remember, or to apply information; to concentrate, to

persist, or to maintain pace; and to adapt or to manage himself.
Tr. 21, 36-37.  He also concluded Plaintiff has marked
limitations in his ability to interact with others.  Tr. 36.
Dr. Nance testified "a highly confrontive supervisor would
result in [Plaintiff's] job failure," but "normal levels of
supervision would be adequate."  Tr. 40.

          The ALJ gave "great weight" to Dr. Nance's
opinion regarding Plaintiff's moderate limitations on the ground
that his opinion was "very well explained and is supported by
the mental status examinations in the record."  Tr. 21.  The
ALJ, however, gave "less weight" to Dr. Nance's testimony
regarding Plaintiff's marked limitation in his ability to
interact with others.  Tr. 21.  The ALJ concluded Dr. Nance's
"concern about [a] possible bad reaction to something other than
a 'normal' level of supervision (which is not clear) is
addressed in the residual functional capacity's limits to
occasional interaction with supervisors."  Tr. 21.  The ALJ
acknowledged Dr. Nance's testimony regarding a "normal" level of
supervision is "not clear."  Tr. 21.  The ALJ also stated she
considered Dr. Nance's testimony in her assessment of
Plaintiff's RFC and accounted for Dr. Nance's opinion by
limiting Plaintiff to "occasional interaction with coworkers and

supervisors." Tr. 17. Dr. Nance's testimony, however, was not
an RFC assessment, but was part of the paragraph B criteria used
by the ALJ to assess the severity of Plaintiff's mental
impairments at Steps Two and Three. Tr. 16, 17, 36. As the ALJ
acknowledged, her assessment of Plaintiff's mental RFC at Steps
Four and Five of the sequential evaluation requires a more
detailed assessment than the evaluation of the severity of
Plaintiff's mental impairments at Steps Two and Three. Tr. 17.
Accordingly, there is a conflict between Dr. Nance's assessment
of Plaintiff's limitations for severity purposes and the ALJ's
use of Dr. Nance's testimony to determine Plaintiff's RFC.

    The ALJ is responsible for "determin[ing]
credibility, resolv[ing] conflicts in the testimony, and
resolv[ing] ambiguities in the record." *Treichler v. Comm'r of
Soc. Sec. Admin.*, 775 F3d 1090, 1098 (9th Cir. 2014). Here the
ALJ did not resolve the ambiguity between Dr. Nance's opinion
and the ALJ's assessment of Plaintiff's RFC. Accordingly, the
Court concludes on this record that the ALJ failed to provide
legally sufficient reasons supported by substantial evidence for
discounting Dr. Nance's testimony.

    In summary, the ALJ erred when she failed to provide
clear and convincing reasons supported by substantial evidence

for discounting the medical opinions of Drs. Somusetty and
Nance.

## II.  **The ALJ erred when she discounted Plaintiff's testimony**.

Plaintiff contends the ALJ erred when she failed to provide
legally sufficient reasons supported by substantial evidence in
the record for rejecting Plaintiff's subjective symptom
testimony.

### A.  **Standards**

The ALJ engages in a two-step analysis to determine
whether a claimant's testimony regarding subjective pain or
symptoms is credible.  "First, the ALJ must determine whether
the claimant has presented objective medical evidence of an
underlying impairment 'which could reasonably be expected to
produce the pain or other symptoms alleged.'"  *Garrison v.
Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter
v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The
claimant need not show her "impairment could reasonably be
expected to cause the severity of the symptom she has alleged;
she need only show that it could reasonably have caused some
degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting
*Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A
claimant is not required to produce "objective medical evidence

of the pain or fatigue itself, or the severity thereof."
*Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this
analysis and there is not any affirmative evidence of
malingering, "the ALJ can reject the claimant's testimony about
the severity of her symptoms only by offering specific, clear
and convincing reasons for doing so." *Garrison*, 759 F.3d at
1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,
883 (9th Cir. 2006)(same). General assertions that the
claimant's testimony is not credible are insufficient. *Parra v.
Astrue,* 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must
identify "what testimony is not credible and what evidence
undermines the claimant's complaints." *Id*. (quoting *Lester v.
Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B. Analysis**

On February 2, 2017, Plaintiff provided an Adult
Function Report. Tr. 390-97. Plaintiff indicated his mental
condition "makes it difficult to work with people" and he has
"trouble interviewing for new positions." Tr. 390. He stated
he needs reminders for personal care; has difficulty with
memory, concentration, and understanding; and change "stresses
[him] out." Tr. 391, 395-96. Plaintiff indicated he prepares

his own meals daily, does household chores and yard work, cleans
his room, goes to the store once a week, and is able to handle
money.  Tr. 392-94.

        At the hearing in September 2018 Plaintiff testified
he completed high school, attended daily classes at a community
college to obtain a certificate as a production technician, and
worked part-time.  Tr. 62-63.  Plaintiff testified he would be
unable to work full-time because he would feel overwhelmed and
"a little bit depressed."  Tr. 68.

        The ALJ discounted Plaintiff's testimony on the ground
that his statements are inconsistent with the medical evidence
and with his activities of daily living.  Tr. 18, 20.  For
example, the ALJ found Plaintiff's mental-status examinations
were "for the most part" normal; Plaintiff declined further
treatment by stating he was "fine"; Plaintiff's Autism Spectrum
Disorder and ADHD improved with medication; and he was able to
perform chores, visit friends, and perform part-time work.  As
noted, the Court concluded Plaintiff's mental-status
examinations and Plaintiff's statement that he was "fine" were
insufficient reasons for the ALJ to discount Dr. Somusetty's
opinion.  For those same reasons, the ALJ's conclusions are not
legally sufficient reasons for discounting Plaintiff's

23 - OPINION AND ORDER

testimony.

The ALJ also relied on other evidence, however, for
discounting Plaintiff's symptom testimony.  For example, on
January 5, 2016, a medical assistant noted Plaintiff "appears
stable" and Plaintiff reported he was "doing well" with
"positive improvement since starting Ritalin."  Tr. 628.  On
August 16, 2016, Dr. Somusetty noted Plaintiff is "stable" with
ADHD, his Autism "seems manageable" and "is not better or
worse," and his attention span is "stabilized."  Tr. 600.  The
ALJ, however, is required to identify the testimony she finds to
be "not credible" and then to provide clear and convincing
reasons supported by evidence in the record to support that
finding.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th
Cir. 2015).  Although the ALJ's finding that a claimant's
chronic condition is "stable" or under control can support an
inference that the claimant can work and is not disabled, this
is generally true only when the claimant's stability is
documented multiple times over an extended period.  *See Purvis
v. Comm'r of Soc. Sec. Admin.*, 57 F. Supp. 2d 1088, 1093 (D. Or.
1999)).  Here the ALJ pointed to only two instances in the
record that indicate Plaintiff "appeared" to be stable.

The ALJ also discounted Plaintiff's testimony based on

Plaintiff's activities of daily living.  Tr. 19-20.  For example, the ALJ noted Plaintiff drives, plays games on his computer, performs chores when needed, and visits friends once every two or three weeks.  Tr. 20.  The ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of his day performing household chores or other activities that are transferable to a work setting.  *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989).  S*ee also Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017)(same).  As explained in *Fair*, however, this line of reasoning has its limits.  The Social Security Act does not require claimants to be utterly incapacitated to be eligible for benefits, and many activities may not be easily transferable to a work environment. *Fair* at 603.  Here the ALJ did not clearly identify any conflict between Plaintiff's reported limitations and the ALJ's summary of Plaintiff's daily activities.  Accordingly, the Court concludes the ALJ erred when she discounted Plaintiff's testimony.

The Court concludes on this record that the ALJ erred when she discounted Plaintiff's testimony and failed to provide legally sufficient reasons supported by substantial evidence in the record for doing so.

25 - OPINION AND ORDER

**III. The ALJ erred when she failed to provide germane reasons for discounting the lay-witness testimony.**

Plaintiff contends the ALJ failed to assess correctly the lay-witness testimony.

####    A.    Standards

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006).  Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012).

####    B.    Analysis

On February 13, 2019, Kim W., Plaintiff's mother, testified at the hearing before the ALJ regarding Plaintiff's limitations.  Tr. 44-49.  Charles and Carol G., Plaintiff's uncle and aunt, and Kristin Dayton, Plaintiff's friend,

submitted Function Reports regarding Plaintiff's limitations.
Tr. 361-85.  As noted, on September 14, 2018, Katherine Gay,
Plaintiff's supervisor, also submitted a Work Activity
Questionnaire regarding Plaintiff's job performance.  Tr. 497-
500.

As to the lay-witness testimony, the ALJ stated:

> I have also considered, and afford little weight,
> to the statement and testimony submitted by
> [Plaintiff's] friends and family members,
> generally stating [Plaintiff] needs prompts and
> remainder to maintain personal hygiene, including
> routine bathing and washing his hair.  [Reference
> omitted].  I give these opinions little weight.
> [Plaintiff's] friends and family members are not
> medical sources.  As lay witnesses, they are not
> competent to argue the severity of [Plaintiff's]
> symptoms in relationship to his ability to work.
> The opinion of a layperson is far less persuasive
> on those same issues than are the opinions of
> medical professionals as relied on herein.  In
> addition, their opinions are not supported by
> objective findings and not consistent with
> treating records.  Their limits are overstated
> when compared to the objective medical evidence.
> [Reference omitted].

Tr. 22.  An ALJ may reject lay-witness statements for the same
reasons that she rejects Plaintiff's testimony.  *Valentine v.
Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).  As
noted, however, the Court has concluded the ALJ failed to
provide clear and convincing reasons for rejecting Plaintiff's
testimony.  The ALJ, therefore, must specifically address the

27 - OPINION AND ORDER

lay-witness testimony and provide germane reasons for rejecting it.  Here the ALJ failed to meet this requirement as to the lay-witness testimony of Plaintiff's family and friend.  Although the ALJ did not explicitly reject the statements of Gay, Plaintiff's manager at his part-time job, the Commissioner contends any failure to reference Gay's statements was harmless error because the ALJ, in any event, considered Gay's statements.  As noted, however, the ALJ is required to address lay-witness testimony specifically.

The Court on this record concludes the ALJ erred when she rejected and/or failed to address the lay-witness testimony without providing germane reasons for doing so.

**IV.  The ALJ erred when she failed in her assessment of Plaintiff's RFC to include limitations identified by Dr. Somusetty.**

Plaintiff contends the ALJ erred when she did not incorporate in her assessment of Plaintiff's RFC Plaintiff's limitations identified by Dr. Somusetty.

As noted, the Court has concluded the ALJ failed to provide clear and convincing reasons for rejecting Dr. Somusetty's opinion.  The ALJ, therefore, must reconsider Dr. Somusetty's opinion and the limitations he assessed when determining Plaintiff's RFC.

28 - OPINION AND ORDER

## REMAND

The decision whether to remand for further proceedings or for payment of benefits generally turns on the likely utility of further proceedings. *Carmickle*, 533 F.3d at 1179.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.*  The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

Here the Court has concluded the ALJ erred when she failed to consider properly the medical opinions of Drs. Somusetty and

29 - OPINION AND ORDER

Nance, failed to provide legally sufficient reasons for discounting Plaintiff's testimony, and failed to provide germane reasons for rejecting the lay-witness testimony.  The Court, therefore, concludes further administrative proceedings are necessary to allow the ALJ to consider properly the evidence and to address these issues.  Accordingly, the Court remands this matter for further administrative proceedings.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 24th day of March, 2021.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge